United States District Court
Southern District of Texas
**ENTERED**
June 10, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AARON GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-129 |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER & OPINION

The Court now considers the motion to dismiss[1] filed by Allstate Fire and Casualty Insurance Company (hereafter, "Defendant"). The Court also considers the response[2] filed by Aaron Garza (hereafter, "Plaintiff") and the reply[3] filed by Defendant. After considering the motion, record, and relevant authorities, the Court hereby **GRANTS** Defendant's motion to dismiss.

### I.   BACKGROUND

This is an insurance case involving a December 23, 2017 motor vehicle collision during which Plaintiff was injured.[4] Plaintiff allegedly incurred $26,180.00 in medical expenses as a result of the accident.[5] After the accident, a third-party tortfeasor involved in the accident offered Plaintiff $30,000.00, the limit of its insurance policy, in settlement of

---

[1] Dkt. No. 17.
[2] Dkt. No. 18.
[3] Dkt. No. 19.
[4] *See generally* Dkt. No. 1-4 (Plaintiff's Original State Court Petition).
[5] *Id.* at 2, ¶ 6. Plaintiff states that he "incurred '*Escobedo*' medical expenses [of] approximately $26,180.00." Plaintiff appears to be referencing the Texas Supreme Court's decision in *Haygood v. De Escobedo*, wherein the court held that plaintiffs may recover for medical expenses "which have been or must be paid by or for the claimant." *Haygood v. De Escobedo*, 356 S.W.3d 390, 398 (Tex. 2011).

Plaintiff's claims against the tortfeasor.[6] Plaintiff alleges that he received permission from Defendant to accept this settlement offer on May 22, 2018.[7]

Plaintiff claims that because "the liability limits of the third-party tortfeasor were not sufficient to compensate Plaintiff for his injuries," Plaintiff made a subsequent claim under his own uninsured motorist (hereafter, "UIM") policy with Defendant on June 5, 2018.[8] On June 29, 2018, Defendant sent a letter to Plaintiff informing Plaintiff that his claim did "'not pierce the threshold for an Underinsured Motorist claim.'"[9] Plaintiff alleges that Defendant "offered absolutely nothing to Plaintiff from his UIM policy coverage."[10]

On March 12, 2019, Plaintiff filed suit against Defendant in Hidalgo County District Court for violations of the Texas Insurance Code. In his state court petition (hereafter, "complaint"), Plaintiff alleges that he "is not seeking any of the proceeds of the UIM insurance policy entered into with Defendant."[11] Rather, Plaintiff clarifies that he is suing Defendant for its violation of the Texas Insurance Code by denying Plaintiff's UIM claim without providing any explanation.[12] Plaintiff brings claims for the following three violations of Chapter 541 of the Texas Insurance Code: (1) failing to make a good faith attempt to effectuate a prompt, fair, and equitable settlement pursuant to Tex. Ins. Code § 541.060 (a)(2); (2) failing to provide adequate explanation pursuant to Tex. Ins. Code § 541.060 (a)(3); and (3) refusing "…to pay on a claim without conducting a reasonable investigation" pursuant to Tex. Ins. Code § 541.060 (a)(7).[13] Plaintiff requests actual damages in the form of past and future medical expenses, as well as past and future pain,

---

[6] Dkt. No. 1-4 at 2, ¶ 6.
[7] *Id.* ¶ 7.
[8] *Id.* at 3, ¶¶ 8–9.
[9] *Id.* ¶ 9; *see also* Dkt. No. 1-1 at 1–8.
[10] *Id.*
[11] Dkt. No. 1-4 at 3, ¶ 10.
[12] *See id.* at 3–4, ¶ 10–15.
[13] *Id.*

suffering, and mental anguish.[14] Plaintiff also requests treble damages, court costs, and attorneys' fees.[15]

On April 18, 2019, Defendant removed to this Court on the basis of diversity jurisdiction.[16] On August 9, 2019, Plaintiff filed a motion for remand, arguing that the amount in controversy requirement was not met and that Plaintiff's case should be remanded to state court.[17] The Court denied Plaintiff's motion for remand on March 12, 2020[18] and thereafter issued a scheduling order.[19] Defendant filed the instant motion to dismiss[20] on April 14, 2020 and Plaintiff responded in opposition on May 5, 2020.[21] Defendant filed its reply[22] to Plaintiff's response on May 18, 2020. The Court now turns to its analysis.

## II.   ANALYSIS

### a.   Legal Standard

Defendant moves for dismissal pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[23] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[24] Although this does not require extensive detail, the pleading must contain "more than labels and conclusions" and go beyond "a formulaic recitation of the elements."[25] The Court regards all well-pled facts as true; however conclusory allegations are not entitled to the same presumption of truth.[26] These well-pled

---

[14] *Id.* at 4–5, ¶ 16.
[15] *Id.*
[16] *See* Dkt. No. 1.
[17] Dkt. No. 12.
[18] Dkt. No. 14.
[19] Dkt. No. 16.
[20] Dkt. No. 17.
[21] Dkt. No. 18.
[22] Dkt. No. 19.
[23] Dkt. No. 17 (citing FED. R. CIV. P. 12(b)(6)).
[24] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), cert. denied, 552 U.S. 1182 (2008)) (internal quotations omitted).
[25] *See Twombly*, 550 U.S. at 555.
[26] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

facts are viewed in the light most favorable to the plaintiff.[27] The Court may dismiss a complaint if the complaint fails to state a claim upon which relief can be granted, or if the pleading does not assert enough facts to support a plausible claim for relief.[28]

As to the question of law, because federal jurisdiction is invoked on the basis of diversity of citizenship,[29] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[30] Absent a decision by Texas's highest tribunal, the decisions by Texas courts of appeals control "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[31]

### b. *Legal Analysis*

As an initial matter, there is much disagreement between the parties regarding which cases guide this Court's analysis of Plaintiff's claims. Moreover, the parties mischaracterize these cases or ignore portions of their holdings entirely. Thus, the Court will begin by outlining the body of law applicable to Plaintiff's Chapter 541 claims before summarizing the parties' arguments and pleadings. The Court will then apply the legal standard governing Plaintiff's Chapter 541 claims to the facts of Plaintiff's case in order to determine whether Plaintiff's claims survive the aforementioned motion to dismiss standard.  The Court first turns to the legal standard governing Plaintiff's claims.

### i. *Legal Standard Governing Extra-Contractual Claims*

The Texas Insurance Code provides for "uninsured or underinsured motorist" policies, which exist to "protect[] insureds who are *legally entitled* to recover from owners

---

[27] *Id.*

[28] *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

[29] *See* Dkt. No. 1 at 2.

[30] *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013); *Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[31] *Exxon Co. U.S.A., Div. of Exxon Corp.*, 889 F.2d at 675 (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)).

or operators of uninsured or underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle."[32] "Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage."[33] UIM insurance policies differ from first-party insurance policies in that the benefits derived from them are "conditioned upon the insured's legal entitlement to receive damages from a third party [tortfeasor]."[34] Thus, in order to recover the benefits of a UIM policy, the insured is required to prove his or her "legal entitlement" to receive damages from the third-party tortfeasor who caused the accident.[35]

For many years, Texas courts were undecided regarding a single question of law pertaining to UIM policy claims: what was a UIM policyholder required to do in order to prove his or her "legal entitlement" to receive damages from the third-party tortfeasor, in order to recover the benefits of the UIM policy from the insurer? In *Brainard vs. Trinity Universal,* the Texas Supreme Court held that for an insured to prove his or her "legal entitlement" to recover damages from a third-party tortfeasor, the insured must first obtain a *judgment* "establishing the liability and underinsured status of the [third-party] motorist."[36] The court held that receiving a judgment establishing legal entitlement is the only way to definitively prove a contractual obligation on the part of the insurer to pay the benefits of the UIM policy.[37] The *Brainard* court explained that the insured could opt to reach a settlement agreement with or obtain an admission from the third-party tortfeasor that he or she was at

---

[32] TEX. INS. CODE § 1952.101(a).
[33] *Brainard vs. Trinity Universal*, 216 S.W.3d 809 (Tex. 2006).
[34] *Id.*
[35] *See id.*; *see also* TEX. INS. CODE § 1952.101(a).
[36] *Brainard*, 216 S.W.3d at 818.
[37] *See id.*

fault; and then litigate the issue of UIM coverage with the insurer.[38] However, that settlement or admission alone does not create a contractual obligation to pay on the part of the insurer, as "a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance" in order to pierce the threshold of the insured's UIM policy.[39] Thus, pursuant to *Brainard*, only a judgment against the third-party tortfeasor will suffice to establish the insured's legal entitlement and create a contractual obligation on the part of the insurer to pay the benefits of a UIM policy.

Defendant correctly argues that because Plaintiff has not obtained a judgment against the third-party tortfeasor as required by *Brainard*, no UIM policy benefits are contractually owed at this time.[40] However, Plaintiff does not seek to recover under the UIM policy – rather, Plaintiff claims he only seeks to recover for Defendant's alleged violations of the Texas Insurance Code in denying Plaintiff's UIM policy claim. Because Plaintiff claims he does not seek to recover the policy benefits, this case hinges on whether Plaintiff's extra-contractual claims for violations of the Texas Insurance Code may be brought absent a claim for breach of contract or a judgment creating a contractual duty on the part of Defendant to pay the UIM policy benefits.[41] However, the *Brainard* decision does not involve any extra-contractual claims at all and thus, does not address this question.[42] Rather, *Brainard* holds that the insured must obtain a judgment against a third-party tortfeasor in order to create an obligation on the part of the insurer to pay the benefits *under the contract*.[43] Accordingly, Plaintiff is correct in arguing that *Brainard*, while relevant to the facts of this case, is largely

---

[38] *Id.*

[39] *Id.* (citing *Henson v. Southern Farm Bureau Casualty Insurance Company*, 17 S.W.3d 652, 654 (Tex. 2000)).

[40] *See id.*

[41] Dkt. No. 17 at 4, ¶ 7.

[42] *See generally Brainard* 216 S.W.3d at 811–819.

[43] *Id.*

inapplicable. Instead, this Court, *Erie*-bound, must look to decisions by Texas' highest tribunal or Texas courts of appeals regarding the relationship between contractual and extra-contractual insurance claims.[44]

Texas courts have long grappled with the relationship between contractual and extra-contractual claims against insurers following their denial of both first-party and third-party policy benefits. Where their claims for policy benefits are denied, insured plaintiffs often bring the following claims against the insurer: (1) breach of contract claims pursuant to the terms of the insurance policy; *and* (2) extra-contractual claims brought under the Texas Insurance Code or another statute providing a cause of action.[45] "Suits brought for breach of contract are distinct from 'extracontractual' actions brought based on an insurance provider's common-law and statutory duties. . ."[46] Chapter 541 of the Texas Insurance Code is one statutory source for extra-contractual claims brought by insured plaintiffs, as it "prohibits insurers from engaging in various 'unfair or deceptive acts or practices.'"[47] The extra-contractual claims that are the subject of this lawsuit – including violations of Chapter 541 for failing to make a good faith attempt to effectuate a prompt, fair, and equitable settlement; failing to provide adequate explanation; and refusing to pay on a claim without conducting a reasonable investigation – are typically brought in conjunction with a breach of

---

[44] *See Homoki*, 717 F.3d at 396; *Exxon*, 889 F.2d at 675; *Erie*, 304 U.S. at 64.

[45] Plaintiffs also bring extra-contractual claims for breach of the common law duty of good faith and fair dealing.

[46] *Shin v. Allstate Texas Lloyds*, No. 4:18-CV-1784, 2019 WL 2869355, at *3 (S.D. Tex. July 3, 2019), adhered to on reconsideration sub nom. *Hyewon Shin v. Allstate Texas Lloyds*, No. 4:18-CV-01784, 2019 WL 4170259 (S.D. Tex. Sept. 3, 2019) (citing *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497 (Tex. 2018)).

[47] *Braden v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-CV-00592-O, 2019 WL 201942, at *5 (N.D. Tex. Jan. 15, 2019), appeal dismissed, No. 19-10198, 2019 WL 3948997 (5th Cir. Apr. 22, 2019) ("Damages for Texas Insurance Code violations are a creature of statute, thus, they are 'extra-contractual' in nature.") (citing TEX. INS. CODE §§ 541.051-.061; *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 452 (5th Cir. 2018); *Menchaca*, 545 S.W.3d at 489)).

contract claim. However, Plaintiff brings only extra-contractual claims and no breach of contract claim, which complicates this Court's consideration of the instant case.

As a general rule, Texas courts have repeatedly held that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy.[48] In 1995, the Texas Supreme Court introduced the idea that a plaintiff may be able to maintain an extra-contractual claim for a violation of the Texas Insurance Code even where the insurer has not been found liable to the plaintiff for the benefits of the underlying policy claim. In *Republic Insurance Company v. Stoker*, the court stated that "[a]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered . . . We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim."[49]

Following the *Stoker* decision, this language suggesting that a plaintiff might be able to maintain extra-contractual claims for violations of the Texas Insurance Code where the insurer was not liable for the underlying policy claim was heavily discussed by Texas courts and the Fifth Circuit.[50] In 2013, the Fifth Circuit discussed *Stoker* in *Mid-Continent Cas. Co. v. Eland Energy Inc.,* calling its "extreme" conduct language dicta and noting that "[t]he *Stoker* language has frequently been discussed, but in seventeen years since the decision

---

[48] *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006). "This rule derives from the fact that the Insurance Code only allows an insured to recover actual damages 'caused by' the insurer's statutory violation." *Menchaca,* 545 S.W.3d at 490 (citing Tex. Ins. Code § 541.151).

[49] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). *Stoker* also suggested that an insured may be able to maintain an extra-contractual claim where the underlying policy claim is not covered if the insurer fails to timely investigate the insured's policy claim. *See id.*; *see also Anderson*, No. 01-15-00257-CV, 2016 WL 3438243, at *6. However, there is no allegation in the instant case that Defendant failed to timely investigate Plaintiff's UIM policy claim. Accordingly, the Court does discuss this exception.

[50] *See, e.g. Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189 (Tex. 1998); *Gates v. State Farm Cty. Mut. Ins. Co. of Texas*, 53 S.W.3d 826, 831 (Tex. App. 2001); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 369 (5th Cir. 2012) ; *Mid-Continent Cas. Co. v. Eland Energy Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013).

appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party claim context, let alone in the third-party claim context. Such case history does not a yield a sound foundation for an *Erie* guess. . ."[51]

The Texas Supreme Court provided a sounder foundation five years later in *USAA Texas Lloyds Company v. Menchaca*.[52] Acting as the most clarifying decision from the Texas Supreme Court regarding the relationship between contractual and extra-contractual insurance claims, *Menchaca* considered whether an insured could bring an extra-contractual claim against the insurer for denial of a homeowner's policy claim after a jury definitively held that the insurer was not liable for the underlying policy claim.

In order to provide more clarity on contractual insurance claims and extra-contractual statutory claims under the Texas Insurance Code, the *Menchaca* court created the following five rules outlining the "relationship between contract claims under an insurance policy and tort claims under the Insurance Code:"[53]

> First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits.[54] Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits.[55] Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right.[56] Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy

---

[51] *Mid-Continent Cas. Co.*, 709 F.3d at 521–22.
[52] *See generally Menchaca*, 545 S.W.3d at 479–521.
[53] *Id.* at 489.
[54] This rule is referred to by the Texas Supreme Court as the general rule. *Id.* at 490–495.
[55] This rule is referred to as the "Entitled-To-Benefits Rule." *Id.* at 495–497. There is no allegation that Defendant's statutory violation caused the loss of the benefits.
[56] This rule is referred to as the "Benefits-Lost Rule." *Id.* at 497–499.

does not grant the insured a right to benefits.[57] And fifth, an insured cannot recover any damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.[58]

With the fourth rule, *Menchaca* built off of the court's previous decision in *Stoker*:

"In *Stoker*, after we announced the general rule that 'there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered,' we explained that we were not excluding 'the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim.' There are two aspects to this independent-injury rule. The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. . . .The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover any damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits.[59]

With *Menchaca*, the Texas Supreme Court formally laid out the independent-injury rule, reinforcing its suggestion in *Stoker* that a claim complying with the independent-injury rule would be rare. The court stated: '[o]ur reference in *Stoker* to 'the possibility' that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one.'[60] Like *Stoker*, the *Menchaca* court also declined to speculate what would constitute a recoverable independent injury.[61]

However, *Menchaca* did provide guidance for courts attempting to determine whether an injury is truly independent of the policy benefits. The independent-injury rule requires a plaintiff to allege that he sustained an injury unrelated to and independent of the

---

[57] This rule is referred to as the "Independent-Injury Rule." *Id.* at 499–500.
[58] This rule is referred to as the "No-Recovery Rule." *Id.* at 500–501.
[59] *Id.* at 499–500.
[60] *Id.*
[61] *Id.* at 504.

denial of his underlying policy claim.[62] In order for an injury to be considered unrelated to and independent of the underlying policy claim, the injury pled by a plaintiff cannot be "'predicated on [the loss] being covered under the insurance policy'" and the damages cannot "'flow' or 'stem' from the denial of the claim for policy benefits.'"[63] "The court further explained that '[w]hen an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits.'"[64] As the Court discusses elsewhere in this Order, this independent-injury rule has been applied similarly in cases involving UIM insurance policies and first-party insurance policies.[65]

The fifth rule, also called the "no-recovery rule," is a "natural corollary to the first four rules: An insured cannot recover any damages under the Insurance Code based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits."[66] This rule clarifies definitively that where an insured seeks to recover damages for an insurer's violations of the Texas

---

[62] *Id.* at 500.

[63] *Moore v. Allstate Texas Lloyd's*, 742 F. App'x 815, 819 (5th Cir. 2018) (citing *Id.* at 500).

[64] *Menchaca*, 545 S.W.3d at 500. The Fifth Circuit discussed how the entitled-to-benefits rule relates to the independent-injury rule in *Aldous v. Darwin v. Nat'l Assurance Co*. Therein, the Fifth Circuit stated that, "*Menchaca* repudiated the independent-injury rule, clarifying instead that an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of benefits." 889 F.3d 798, 799 (5th Cir. 2018). A later decision by the Fifth Circuit in *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.* seemed to clarify that "the independent-injury rule does not restrict the damages an insured can recover. . .Rather, the independent-injury rule limits the recovery of other damages that 'flow' or 'stem' from a mere denial of policy benefits." 903 F.3d 435, 452 (5th Cir. 2018). *See also Braden v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-CV-00592-O, 2019 WL 201942, at *5 (N.D. Tex. Jan. 15, 2019), appeal dismissed, No. 19-10198, 2019 WL 3948997 (5th Cir. Apr. 22, 2019) (citing *Lyda Swinerton Builders, Inc.,* 903 F.3d at 452).

[65] *See* note 88.

[66] *Menchaca*, 545 S.W.3d at 500–501.

Insurance Code, the insured must prove either (1) a right to receive benefits under the policy; or (2) compliance with the independent-injury rule.[67]

The Court will now summarize the parties' arguments and pleadings, before applying the aforementioned law to the facts of the instant case in order to determine whether Plaintiff's extra-contractual Chapter 541 claims survive Defendant's motion to dismiss. The Court first turns to the arguments proffered by Defendant's motion to dismiss.

*ii.    Summarization of the Pleadings*

1. Defendant's Motion to Dismiss

Defendant argues that Plaintiff cannot bring a claim against Defendant for alleged violations of the Texas Insurance Code without first proving Defendant's obligation to pay the benefits of Plaintiff's underlying UIM claim.[68] Citing *Brainard*, Defendant argues that Plaintiff must first prove that Defendant was contractually obligated to pay Plaintiff's UIM claim in order to plausibly state a claim for violations of the Texas Insurance Code regarding Defendant's settlement practices, investigation, and eventual denial of the UIM claim.[69] Because Plaintiff does not seek to recover under the UIM policy itself, Defendant argues that Plaintiff's "extra-contractual [Texas Insurance Code] claims regarding Defendant's evaluation of the [UIM policy] claim have not accrued and/or are premature . . ."[70]

2. Plaintiff's Response

In response, Plaintiff argues that "[n]owhere in the Texas Insurance Code is there any requirement that an insured must obtain a judgment based on the [UIM] policy before

---

[67] *See id. Brainard* merely provides guidance for what an insured must do to establish his right to receive benefits under a UIM policy, and Defendant's motion to dismiss virtually ignores the fact that Plaintiff has the option of establishing an injury independent of a right to benefits pursuant to *Menchaca*.
[68] *See generally* Dkt. No. 17.
[69] *Id.* at 4–5, ¶¶ 6–7 (citing *Brainard*, 216 S.W.3d at 809).
[70] *Id.* at 4, ¶ 8.

being entitled to relief under [Chapter] 541" of the Texas Insurance Code.[71] Plaintiff notes that the language of Chapter 541 makes it illegal for an insurer to fail to "attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim to which the insurer's liability has become *reasonably clear*."[72] Based on this language, Plaintiff argues that establishment of an insurer's liability for the underlying UIM policy claim is not a precursor to an extra-contractual claim for a Texas Insurance Code violation, as the Code itself only requires that the insurer's liability for the underlying policy claim be "reasonably clear."[73]

Plaintiff further argues that Defendant's reliance on *Brainard* is improper, as the facts of *Brainard* did not involve an extra-contractual claim under the Texas Insurance Code.[74] Instead, Plaintiff points to *Menchaca* to argue that contractual and extra-contractual claims, such as claims under Chapter 541, are separate and independent causes of action.[75] Plaintiff  argues that *Menchaca* "held that a contract judgement is not a prerequisite to brin[g]ing a statutory claim under Tex. Ins. Code § 541.8" and thus, Plaintiff "'need not prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation.'"[76] Plaintiff points to *Fowler v. General Insurance Company of America* as an example of a federal court allowing a plaintiff to assert extra-contractual Chapter 541 claims prior to obtaining a judgment establishing that the insurer is obligated to pay out the benefits of the underlying UIM policy.[77]

---

[71] Dkt. No. 18 at 3–4, ¶ 6.
[72] *Id.* at 3, ¶ 5 (citing Tex. Ins. Code § 541.060(a)(3)).
[73] *Id.*
[74] *Id.* at 2, ¶ 3.
[75] *See id.* at 2, ¶ 3 (citing *Menchaca*, 545 S.W.3d at 52).
[76] *Id.* at 5, ¶ 8 (citing *Menchaca*, 545 S.W.3d at 52).
[77] *Id.* at 7, ¶ 10 (citing *Fowler v. General Insurance Company of America*, 3:14-CV-2596-G, (2014 WL 5879490) (N.D. Tex. November 13, 2014)).

Finally, Plaintiff argues that he qualifies for *Menchaca's* independent-injury rule.[78] While Plaintiff does not allege Defendant committed some sort of extreme act causing an injury independent of the policy benefits, he argues that his claim for damages in the form of "mental anguish" is an independent injury suffered as a result of Defendant's Chapter 541 violations.[79] Plaintiff argues that this request for mental anguish damages qualifies him to bring extra-contractual claims against Defendant for violations of the Texas Insurance Code.[80]

### 3. Defendant's Reply to Plaintiff's Response

In reply to Plaintiff's response, Defendant argues that *Menchaca* is inapplicable in this case because it did not involve a UIM policy.[81] Defendant further argues that Plaintiff does not plead an independent injury to qualify for the narrow exception provided by the court in *Menchaca*.[82] Rather, Defendant argues that pursuant to *Menchaca*, "[a]n independent injury is not independent if the statutory or extra contractual claims are predicated on the loss being covered under the insurance policy or if the damages flow or stem from the denial from policy benefits."[83] Defendant further argues that "[t]he insurance code claims Plaintiff is making arise out of dissatisfaction with [Defendant's] position regarding settlement of his UM/UIM claim," which "stem[s] from the denial of policy benefits."[84] Finally, Defendant argues that pursuant to both *Menchaca* and *Stoker* "[e]vidence of an independent injury generally requires the insured establish that the insurer

---

[78] *Id.* at 5, ¶ 8.
[79] *Id.*
[80] *Id.*
[81] Dkt. No. 19 at 1, ¶ 1.
[82] *Id.* at 2, ¶ 2.
[83] *Id.* at 3, ¶ 6 (citing *Menchaca*, 545 S.W.3d at 489).
[84] *Id.*at 3–4, ¶ 7.

committed some act 'so extreme', that it would cause injury independent of the policy claim."[85]

After considering the parties' arguments and characterization of the case law, the Court will now address the parties' arguments and apply the relevant law to the facts of the case.

       *iii.*    *Application of the Legal Standard Regarding Extra-Contractual Claims to the Facts of the Instant Case*

Defendant first argues *Menchaca* is inapplicable to this case because the facts of *Menchaca* did not involve an underlying UIM policy. However, the differing nature of UIM policies and their genesis in tort law does not play into this Court's analysis of whether or not the instant Plaintiff can bring an extra-contractual claim under Chapter 541 of the Texas Insurance Code without first establishing liability on the part of the insurer to pay out the benefits of the underlying insurance policy claim. That question of law is the same regardless of whether the underlying insurance policy is a UIM policy or a first-party policy, and the difference only comes when considering *how* to establish liability under the two different types of policies. While *Brainard* contemplated what an insured plaintiff must do to prove a contractual obligation on the part of the insurer to pay the benefits of the UIM policy,[86] *Menchaca* considered "whether an insured can recover for an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy."[87] The latter question is the question posed to this Court at the instant juncture. Moreover, the rationale from *Stoker* utilized in the *Menchaca* decision has

---

[85] *Id.* at 3, ¶ 4 (citing *Menchaca*, 545 S.W.3d at 499; *Stoker*, 903 S.W.2d at 341).
[86] *See Brainard* 216 S.W.3d at 811–819.
[87] *See id.* at 490.

repeatedly been applied similarly in cases involving both UIM insurance policies and first-party insurance policies.[88]

Thus, Plaintiff is correct to note that *Menchaca*, rather than *Brainard*, is the applicable case for the purposes of determining whether Plaintiff is permitted to maintain extra-contractual Texas Insurance Code violation claims against Defendant absent a finding that Defendant breached the terms of underlying UIM policy. Yet, Plaintiff misrepresents the substance of the *Menchaca* decision in his response to Defendant's motion to dismiss. Plaintiff quotes the *Menchaca* opinion in arguing that he "'need not prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation.'"[89] However, Plaintiff completely ignores that fact that immediately following this sentence, the *Menchaca* court builds off of *Stoker* to outline the specific rules and circumstances under which a similarly situated plaintiff may bring extra-contractual claims without prevailing on

---

[88] *Arnold v. Allstate Fire & Cas. Ins. Co.*, No. A-19-CV-00558-LY, 2019 WL 5102741, at *5 (W.D. Tex. Oct. 10, 2019) (holding that plaintiff required a judgment and a finding of breach of contract under the UIM policy in order to pursue a claim against the insurer defendant for failure to make prompt payment under the Texas Insurance Code, but not necessarily for extra-contractual claims for failure to conduct an adequate investigation. Plaintiff's extra-contractual claims regarding this failure to investigate were instead dismissed on the grounds that plaintiff did not allege any damages that were unrelated and independent of the policy claim*); Rodriguez v. Allstate Fire & Cas. Ins. Co.,* No. 5:18-CV-1096-OLG, 2019 WL 650438, at *2 (W.D. Tex. Jan. 10, 2019) (citing *Borg v. Metro. Lloyd's of Texas,* No. W:12-CV-256, 2013 WL 12091651, at *3 (W.D. Tex. Feb. 21, 2013) ("[T]o the extent [plaintiff's Chapter 541] claims are premised on Defendant's alleged failure to conduct an adequate investigation of [p]laintiffs' UIM claim, those claims fail because [p]laintiffs have failed to allege that they suffered any damages 'unrelated to and independent of the policy claim.'"). Defendant is correct that courts have doubted *Menchaca's* applicability to cases involving third-party insurance claims. *See In re Colonial Cty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 WL 5699735, at *3 (noting that *Brainard* distinguished UIM policies from first-party policies and that *Menchaca* did not involve a UIM policy, but applying *Menchaca* to the UIM policy "assuming, arguendo" that it was applicable). However, the Court finds nothing to suggest that the rules delineated by *Menchaca* apply only to first-party insurance policies. Prior to *Menchaca*, courts often applied the language from *Stoker* discussing the independent-injury rule to cases involving an underlying UIM policy. *See Progressive Cty. Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 922 (Tex. 2005); *Borg,* No. W:12-CV-256, 2013 WL 12091651, at *3; *Rodriguez,* No. 5:18-CV-1096-OLG, 2019 WL 650438, at *2; *Arnold,* No. A-19-CV-00558-LY, 2019 WL 5102741, at *4. The *Menchaca* court built on this independent-injury rule by utilizing *Stoker's* language, so it would be illogical to argue that the independent-injury rule as it was briefly described in *Stoker* no longer applied to cases involving third-party insurance policies only after the rule was further clarified by *Menchaca*. Thus, as the court in *In re Colonial Cty. Mut. Ins. Co.* assumed "arguendo, that *Menchaca* applies to UIM claims" this Court will proceed as though *Menchaca* is applicable to cases involving UIM policies until there is any indication by the Texas Supreme Court or Texas Court of Appeals that this is not the case.

[89] *Id.* at 5, ¶ 8 (citing *Menchaca*, 545 S.W.3d at 52).

a separate breach of contract claim.[90] The rules delineated by *Menchaca* severely limit Plaintiff's ability to do so.

As a final note, in considering which cases guide this Court's analysis of the instant case, the Court is unpersuaded by Plaintiff's argument that the Court should follow the rationale of *Fowler v. General Insurance Company of America*.[91] *Fowler* held that based on the Texas Insurance Code's requirement that liability be "reasonably clear" in order for the insured to bring a claim for an insurer's violation of the statute, an insured did not have to obtain a judgment against the third-party tortfeasor establishing the insured's legal entitlement to recover the benefits of the UIM policy prior to bringing an extra-contractual claim against the insurer.[92]

The Court declines to rely on this decision for two reasons. First, the *Fowler* court held that for a plaintiff to actually succeed on an extra-contractual claim, a court must first determine that the insurer breached the underlying contract.[93] The court stated that "[w]hile a judgment on the third party's liability is not a condition precedent to stating a claim under [Chapter 541], an insured plaintiff's extra-contractual claim will only succeed if the court determines that the insurer breached the underlying contract. Thus, courts must assess whether extra-contractual claims should be abated until liability is determined and, relatedly, whether separate trials should be held."[94] This passage suggests that the *Fowler* court did not even contemplate a case wherein a plaintiff would pursue *only* extra-contractual claims, and

---

[90] The quote from *Menchaca* reads as followed: "USAA's argument overlooks the fact that—as we have clarified today—an insured need not prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation. Instead, as we have explained, the insured can prevail under the entitled-to-benefits rule or the benefits-lost rule if she establishes (1) the insurer violated the statute and (2) the violation resulted in her loss of benefits she was entitled to under the policy." *Menchaca*, 545 S.W.3d at 504. Plaintiff conveniently leaves out the latter half of this passage and a broader discussion of the ruling in *Menchaca*.
[91] *See generally Fowler*, No. 3:14-CV-2596-G, 2014 WL 5879490.
[92] *Id.* at *3–4.
[93] *Id.* at *4.
[94] *Id.*

the court goes so far as to say that a plaintiff could not maintain such claims absent a breach of the underlying contract.

Second, *Fowler* was decided by the Northern District of Texas prior to the Texas Supreme Court's clarifying decision in *Menchaca*. While *Fowler* was correct in noting that *Brainard* did not explicitly require a plaintiff to obtain a judgment against the third-party tortfeasor prior to bringing extra-contractual claims, the *Menchaca* court attempted to clarify the law in this area by outlining five rules governing when a plaintiff may assert extra-contractual claims. Plaintiff admits this much is true in his response to Defendant's motion to dismiss, where he alleges an independent injury and pleads with the Court to utilize *Menchaca* as its guiding light.[95] The Court agrees that *Menchaca* guides it. Thus, the Court will now apply the law of *Menchaca*, as it is outlined in this Order, to the facts of Plaintiff's case.

The Court begins by applying *Menchaca's* general rule to Plaintiff's claims in order to determine whether Plaintiff's compliance with the independent-injury rule is necessary. Pursuant to *Menchaca's* general rule, Plaintiff is precluded from recovering for his extra-contractual Chapter 541 claims unless he is entitled to the benefits of the policy.[96] As the Court has already discussed, to prove his or her entitlement to the policy benefits of a UIM insurance policy, an insured must first receive a judgment against the third-party tortfeasor that caused the accident.[97] Plaintiff merely reached a settlement agreement with the third-party tortfeasor involved in his accident and has not obtained such a judgment as required by *Brainard* in order to prove a right to receive benefits from Defendant under the UIM

---

[95] *See* Dkt. No. 18.
[96] *Menchaca*, 545 S.W.3d at 489 ("[A]s a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits.").
[97] *See Brainard,* 216 S.W.3d at 818.

policy.[98] As such, pursuant to *Menchaca*, Plaintiff may only maintain extra-contractual claims against Defendant if he complies with the independent-injury rule. Thus, the Court will now apply the independent-injury rule to Plaintiff's complaint.

Plaintiff requests actual damages in the form of past and future medical expenses, as well as past and future pain, suffering, and mental anguish.[99] In his response to Defendant's motion to dismiss, Plaintiff argues that his requested "mental anguish damages, are separate from and differ from benefits under the insurance policy."[100]

In reply, Defendant first argues that "[Plaintiff's] claim is not truly independent because it flows from the denial of a claim for policy benefits."[101] Defendant further argues that pursuant to both *Menchaca* and *Stoker* "[e]vidence of an independent injury generally requires the insured establish that the insurer committed some act 'so extreme', that it would cause injury independent of the policy claim."[102] Defendant is correct that for the insured to satisfy the independent-injury rule, the insurer must have committed "some act, so extreme, that would cause injury independent of the policy claim."[103] In the absence of extreme

---

[98] Dkt. No. 1-4 at 2, ¶ 7.

[99] *Id.* at 4–5, ¶ 16.

[100] Dkt. No. 18 at 6, ¶ 8 (citing *Twin City Fire Ins. Co*, 904 S.W.2d at 666 n. 3).

[101] Dkt. No. 19 at 4, ¶ 8.

[102] *Id.* at 3, ¶ 4 (citing *Menchaca*, 545 S.W.3d at 499; *Stoker*, 903 S.W.2d at 341).

[103] Plaintiff does not argue that an allegation of extreme conduct on the part of the insured is not necessary to comply with the independent-injury rule, and Plaintiff also does not argue that extreme conduct occurred. However, courts have repeatedly viewed the rulings of *Menchaca* and *Stoker* to require an allegation of extreme conduct committed by the insurer in order to comply with the independent-injury rule. *See, e.g. Gates*, 53 S.W.3d at 831 (citing *Stoker* and holding that "[a]ssuming, without deciding, an insurer in denying a claim may commit an act so extreme to cause an injury independent of the policy claim, we conclude an insured may not recover under this theory unless the insured can establish 'extreme' conduct by the insurer during the claims process."); *Garcia v. Liberty Ins. Corp.*, No. CV H-17-1587, 2019 WL 825883, at *8 (S.D. Tex. Jan. 17, 2019), report and recommendation adopted sub nom. *Garcia v. Liberty Mut. Ins. Co.*, No. CV H-17-1587, 2019 WL 1383011 (S.D. Tex. Mar. 27, 2019) (granting the defendant's motion for summary judgment as to plaintiffs' extra-contractual claims for violations of the Texas Insurance Code where the plaintiffs had "not alleged any act so extreme as to cause independent injury" and failed to produce any evidence of an injury that [was] independent from the loss of benefits."); *In re Colonial County Mutual Insurance Company*, 2019 WL 5699735 at *3 ("The [Texas Insurance Code] violation *must* be 'some act, so extreme, that [it] would cause injury independent of the policy claim.'") (emphasis added); *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 438 (Tex. App. 2018), review dismissed (Dec. 6, 2019) (applying *Menchaca's* independent-injury rule and granting

---

conduct and a properly independent injury, Plaintiff in ineligible for the exception to the general rule disallowing Plaintiff's extra-contractual claims.[104]

In light of this, the question remains as to whether a plaintiff must allege extreme conduct on the part of the insurer in the complaint in order to survive a motion to dismiss. Nearly all of the cases involving the independent-injury rule, as it was clarified by *Menchaca*, were decided on after both parties had submitted evidence in support of motions for summary judgment.[105] Courts in these cases repeatedly note that the insured plaintiffs had not offered evidence sufficient to prove that the insurer committed extreme conduct that resulted in an independent injury.[106] Here however, where Defendant has moved for dismissal rather than summary judgment, Plaintiff need only include "enough facts to state a claim to relief that is plausible on its face."[107] Thus, while it is not necessarily required that Plaintiff plead facts to definitively prove that his independent injury was caused by

---

the defendant's motion for summary judgment on plaintiffs' extra-contractual claims for violations of the Texas Insurance Code and the DTPA on the grounds that the plaintiff did not allege "any act so extreme as to cause independent injury."); *Cano v. State Farm Lloyds*, 276 F. Supp. 3d 620, 628 (N.D. Tex. 2017) (granting the defendant's motion for summary judgment as to the plaintiffs' extra-contractual claims for violations of the Texas Insurance Code where plaintiffs did "not allege[], or even raise[] a genuine dispute of material fact, that any independent damages exist. The only 'extreme act' Plaintiff's reference is that 'Defendants' conduct during the investigation of the loss was extremely unreasonable and egregious.'"); *Cantu v. State Farm Lloyds,* No. 7:14-CV-456, 2016 WL 5372542, at *8 (S.D. Tex. Sept. 26, 2016) (citing *Stoker*, 903 S.W.2d at 17) (noting that an exception to the general rule that an insured must first prevail on a breach of contract claim against the insurer includes "a commission of 'some act, so extreme, that would cause injury independent of the policy claim' and granting the defendant's motion for summary judgment as to the plaintiffs' extra-contractual claims for violations of the Texas Insurance Code on the grounds that plaintiffs "failed to even allege an action which would constitute an independent injury."); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 649 (S.D. Tex. 2012) (noting that "[b]ecause Plaintiffs' breach of contract claim fail[ed], in order to prevail on their common law and statutory bad faith claims, Plaintiffs must raise a genuine issue of material fact that Defendant 'commit[ted] some act, so extreme, that would cause injury independent of the policy claim'" and granting summary judgment in the defendant's favor on the grounds that "nothing before the Court indicate[d] that this was an act so extreme that it caused injury independent of the Policy claims."). *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00257-CV, 2016 WL 3438243, at *6 (Tex. App. June 21, 2016) ("'absent a breach of contract, the insured cannot maintain a [extra-contractual] common law bad faith claim in Texas unless the insurer 'commit[s] some act, so extreme, that would cause injury independent of the policy claim . . ."' (quotations omitted)).

[104] *See id*; *see also Menchaca*, 545 S.W.3d at 500.

[105] *See* note 103.

[106] *See id.*

[107] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 570) (internal quotations omitted).

Defendant's extreme conduct in order to survive a motion to dismiss, Plaintiff must plead enough facts to suggest that this scenario is at least plausible. If Plaintiff is able to do so, it is possible that he could present evidence at a later stage in the case that supports an argument that Defendant's actions were extreme as required by the independent-injury rule.

In the complaint, Plaintiff does not argue that Defendant engaged in extreme conduct. Rather, Plaintiff merely alleges that Defendant's adjuster, Corey Tate, sent Plaintiff a letter denying Plaintiff's UIM claim.[108] Plaintiff alleges that the letter was devoid of an explanation or any information regarding why the claim was denied.[109] Plaintiff does not attach the letter and only provides that the letter informed Plaintiff of the fact that Plaintiff's claim did "'…not pierce the threshold for an Underinsured Motorist claim.'"[110]

The Court finds that even presuming their truth, the limited facts pled by Plaintiff are insufficient to suggest that the actions of Defendant's agent were extreme as to comply with the independent-injury rule and make Plaintiff's extra-contractual claims plausible. Plaintiff's complaint contains three sentences regarding the adjuster's letter, and Plaintiff merely alleges that the letter did not contain an explanation regarding why Plaintiff's claim was denied.[111] Based on these facts alone, there is nothing to even suggest that Defendant or its adjuster acted in an extreme manner as required by *Stoker* and *Menchaca*.[112] Moreover, the suggestion in *Stoker* and *Menchaca* that an independent-injury claim would be rare supports the proposition that sending a claim denial letter to an insured does not constitute

---

[108] Dkt. No. 1-4 at 3, ¶ 9.
[109] *Id.*
[110] *Id.*
[111] *See id.*
[112] *See Stoker,* 903 S.W.2d at 341; *Menchaca,* 545 S.W.3d at 499.

extreme behavior harming Plaintiff in a way that is independent of Plaintiff's loss of benefits under the policy.[113]

All other statements in Plaintiff's complaint that could seemingly be interpreted as allegations are conclusory statements that often quote the Texas Insurance Code. For example, Plaintiff states that "the final decision made by Corey Tate on behalf of [Defendant] was not a good faith attempt to effectuate a prompt, fair and equitable settlement of Plaintiff's claims. . ."[114] These types of conclusory allegations utilizing language from the Texas Insurance Code are also insufficient to suggest any extremity on the part of Defendant and are not entitled to the same presumption of truth as Plaintiff's well-pled facts.[115] As such, because Plaintiff's complaint does not include any facts or allegations suggesting that Defendant engaged in extreme conduct as to cause an independent injury on Plaintiff's part, Plaintiff has not satisfied the independent-injury rule. Thus, Plaintiff's claims are unable to proceed absent a showing that Plaintiff is entitled to the benefits of the underlying UIM policy.

Finally, even assuming, arguendo, that this Court agreed with *Fowler* following further clarification by *Menchaca*, Plaintiff also ignores *Fowler*'s holding that "an insured plaintiff's extra-contractual claim will only succeed if the court determines that the insurer breached the underlying contract."[116] Here, Plaintiff does not allege that Defendant breached the underlying contract or improperly denied his claim. Accordingly, even under the authority cited by Plaintiff, his claims would not survive a motion to dismiss because there

---

[113] *See Menchaca,* 545 S.W.3d at 500 ("Our reference in *Stoker* to 'the possibility' that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one.").
[114] Dkt. No. 1-4 at 3, ¶ 11.
[115] *R2 Invs. LDC,* 401 F.3d at 642.
[116] *Id.*

is not even an allegation that Defendant breached the contract to make such a finding plausible. Accordingly, the Court finds that Plaintiff's claims should be dismissed in their entirety, as they cannot be maintained pursuant to the general rule of *Menchaca*.[117]

In light of the Court's dismissal of Plaintiff's claims due to his failure to plead facts suggesting plausibility of extreme conduct on the part of Defendant, the Court need not consider whether Plaintiff's request for damages in the form of "mental anguish" constitute an injury unrelated to and independent of the policy benefits. However, the Court notes that Plaintiff's decision to request damages for "mental anguish" and past and future medical expenses in the same breath suggests to the Court that Plaintiff is in all actuality seeking the benefits of the underlying UIM policy, which would be barred under the independent-injury rule.[118]

### III. HOLDING

In light of the foregoing, the Court finds that Plaintiff fails to state a claim upon which relief can be granted. Accordingly, the Court hereby **GRANTS** Defendant's motion to dismiss[119] and **DISMISSES WITH PREJUDICE** Plaintiff's claims. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 10th day of June, 2020.

_M. Alvarez_
_____
Micaela Alvarez
United States District Judge

---

[117] *Menchaca*, 545 S.W.3d at 489 ("[A]s a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits.").
[118] *See* Dkt No. 1-4 at 4, ¶ 16.
[119] Dkt. No. 17.